(360 P.3d 472)
No. 112,035

STATE OF KANSAS, *Appellee*, v. MARCUS GRAY, *Appellant*.

Opinion filed October 30, 2015.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jason R. Lane*, assistant county attorney, *David E. Yoder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

MALONE, C.J.: Marcus Gray appeals following his convictions of possession of cocaine, possession of marijuana, driving with a suspended license, failure to signal a turn, and two counts of felony interference with law enforcement. Gray claims: (1) the district court erred in denying his motion to suppress because the law enforcement officer who conducted the traffic stop did so in violation of Kansas statutes prohibiting racial or other biased-based policing; (2) the State failed to present sufficient evidence to support his convictions of felony interference with law enforcement; and (3) the district court lacked jurisdiction to impose a felony sentence for possession of marijuana because the State did not charge Gray with felony possession of marijuana. We agree with Gray that the State failed to present sufficient evidence to support his convictions of felony interference with law enforcement, but we otherwise affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2013, at approximately 2 a.m., Deputy Brandon Huntley of the Harvey County Sheriff's Office was on patrol when he noticed a silver Ford Focus driving north on Interstate 135 ("I-135"), south of Newton. Huntley later testified that he

began following the car simply because it was there. He ran a check on the license plate and discovered that the car was registered to a female living in Salina. Based on Huntley's "extensive experience with drug interdiction," he knew that illegal drugs were often trafficked on I-135 from Wichita to Salina.

Huntley continued to follow the car along I-135, off at Exit 31, and through a roundabout with street lighting, at which point he realized the driver was male. Huntley later testified that in his experience, many drug cases involve someone operating a vehicle not registered in his or her name. The car pulled into a gas station but parked with the gas pumps on the passenger's side. According to Huntley, this was suspicious because he believed the gas cap was on the driver's side—Huntley was unaware at the time that a Ford Focus has the gas cap on the passenger's side of the car.

Huntley decided to continue watching the car, so he drove past the gas station and parked down the road where he could still see the car. The driver got out of the car and went into the gas station. It was not until the driver got out of the car that Huntley realized he was African-American. The driver walked back to the car a few minutes later, looked all around, got into the car, and drove away.

Huntley continued to follow the car and shortly thereafter saw the driver turn without using a turn signal. At that point, Huntley turned on his emergency equipment and conducted a traffic stop. According to Huntley's written report, which was introduced into evidence at the suppression hearing, Huntley approached the driver and explained the reason for the stop. Huntley asked the driver for his driver's license. The driver stated that he had a Louisiana driver's license but not in his possession. Huntley asked the driver if he had any identification on him. The driver stated that he did not, but he said that his name was Jimmy Ray Turner. At that point, Huntley smelled a moderate odor of marijuana and a slight odor of an alcoholic beverage emitting from inside the vehicle.

Because the driver did not have any type of identification on him, Huntley asked him to provide his social security number and address as listed on his driver's license. After rambling off several combinations of numbers, the driver finally provided a social se-

curity number. He also stated that the address listed on his driver's license was 106 Turner Lane, in Ruston, Louisiana. Huntley told the driver to stay inside his vehicle while he checked his driver's license status.

Huntley returned to his patrol vehicle and requested dispatch to send a second officer to his location because of the circumstances with the stop. Huntley also checked for a driver's license through the State of Louisiana under the name of Jimmy Ray Turner. Huntley was informed that a Louisiana driver's license was issued to Jimmy Ray Turner, but the address and social security number did not match the information that the driver had provided. Also, the physical description of Jimmy Ray Turner provided on the Louisiana driver's license did not match the driver's physical description. At this point, Huntley was confident that the driver had provided him with a false name.

Officer Jon Adkins with the Newton Police Department arrived at the scene a short time later. Huntley reapproached the driver and explained that the information from the State of Louisiana did not match the information he had provided. However, the driver insisted that his name was Jimmy Ray Turner. Huntley asked the driver to exit the vehicle and he did. After conducting a quick pat-down to check for weapons, Huntley asked the driver to place his hands behind his back. At that time, the driver quickly spun to his left and attempted to run away. He ran about 20 feet before Huntley and Adkins pulled him to the ground. After being told to stop resisting numerous times, the driver complied and was placed under arrest. At that point, the driver identified himself as Marcus Gray. When Huntley contacted dispatch for information on Gray, he learned that Gray had outstanding out-of-state warrants and a suspended driver's license. Adkins took Gray to the Harvey County Detention Center and found marijuana and cocaine on him.

On November 13, 2013, the State charged Gray with possession of cocaine with intent to distribute, possession of marijuana, possession of cocaine with no drug tax stamp, driving with a suspended license, failure to signal a turn, and two counts of felony interference with law enforcement. On December 5, 2013, Gray filed a motion to suppress the evidence. The motion generally alleged that

Gray had been subject to an "illegal traffic stop and detention." The motion did not allege illegal racial policing as a ground for suppression of the evidence.

The district court held a hearing on the motion to suppress on January 6, 2014. At the hearing, Huntley and Gray testified. Huntley freely admitted that at the time he pulled Gray over, he was watching for a traffic infraction so that he could conduct a pretextual stop; he wanted to see if he might find drugs in the car. However, he maintained that the only reason he stopped the car was Gray's failure to signal a turn.

Gray testified that on the night in question, he was driving his girlfriend's car to Salina, where he and his girlfriend lived. He noticed Huntley following him on I-135 and exited at Exit 31 because he was hungry. When he pulled into the gas station, he went into the store and bought a sandwich. Gray further testified that when he came out of the gas station, he looked around to see if the officer who had been following him was still around, but he did not see anyone. According to Gray, he used his turn signal at every turn, including the turn Huntley testified that Gray had failed to use his signal.

At the end of the hearing, the district judge denied the motion to suppress, explicitly stating that he believed that Huntley observed Gray failing to use his turn signal. The district court found that the traffic stop was a permissible pretextual stop. Gray's counsel then stated there was "one other issue [he wanted] to put on the record" before the hearing closed. Gray's counsel briefly argued that the stop violated the racial profiling prohibitions in K.S.A. 2014 Supp. 22-4606 and K.S.A. 2014 Supp. 22-4609. Without much explanation, Gray's counsel asserted that racial profiling rendered the pretextual stop illegitimate. The district court rejected Gray's argument and found from the evidence that Huntley did not stop Gray because of his race. The judge specifically noted that Huntley did not know that Gray was black until he stopped at the convenience store. The judge concluded by stating: "I find Deputy Huntley to be credible. I don't find there's anything in the record Mr. Gray got stopped because he happened to be a black man."

The parties agreed to proceed to a bench trial on the evidence submitted at the hearing on the motion to suppress—Huntley's and Gray's testimony, Huntley's police report, and maps on which Huntley and Gray had indicated their route through Newton—as well as a Kansas Bureau of Investigation (KBI) laboratory report. In a pleading entitled "Trial Stipulation of Facts," signed by both parties, Gray "specifically continue[d] to object to the admission of said evidence based on said motion, as well as the evidence and arguments made at the suppression hearing."

The bench trial was held on March 25, 2014. The State dismissed the charge of possession of cocaine with no tax stamp. In addition, for the purposes of convicting Gray of possession of marijuana as a second-time offense, a felony, the State submitted into evidence a journal entry from Louisiana showing Gray's prior convictions of possession and distribution of marijuana. Gray stipulated to the documents. Similarly, Gray had no objection to the State's submission into evidence of a document from the State of Louisiana showing that Gray's driver's license was suspended on the date in question.

After the stipulated evidence was submitted, Gray argued that the district court should reduce the first charge from possession of cocaine with intent to distribute to simple possession of cocaine. The district court agreed and found Gray guilty of possession of cocaine, felony possession of marijuana, driving with a suspended license, failure to signal a turn, and two counts of felony interference with law enforcement. On May 14, 2014, the district court sentenced Gray to a controlling term of 26 months' imprisonment but granted probation with community corrections for 12 months. Gray timely appealed the district court's judgment.

## MOTION TO SUPPRESS

Gray first claims the district court erred in denying his motion to suppress. Specifically, he claims that the traffic stop violated K.S.A. 2014 Supp. 22-4609, which prohibits racial or other biased-based policing. Gray further argues that in the absence of a statutorily prescribed mechanism for enforcement of K.S.A. 2014 Supp. 22-4609 in criminal proceedings, this court should order a

hearing similar to those used to consider challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), which prohibits excluding potential jurors solely on account of their race. Gray advocates the following test: "Whenever an officer makes a pretextual stop of a member of a protected class, the burden should shift to the state to show some race-neutral justification, other than the basis for the pretextual stop itself, for investigating a particular person or vehicle."

In response, the State first claims that Gray failed to preserve this issue for appeal. The State also argues that the Kansas statutes prohibiting racial or other biased-based policing do not provide constitutional search and seizure protections subject to the exclusionary rule. Instead, the State argues that the statutes provide a civil remedy for any violation. Finally, the State argues that even if the exclusionary rule applies to violations of the Kansas statutes prohibiting racial or other biased-based policing, its application would not be appropriate here because the district court found that Huntley did not stop Gray because of his race, and this finding is supported by substantial competent evidence.

An appellate court uses a bifurcated standard to review a district court's decision on a motion to suppress. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1012, 350 P.3d 1048 (2015). In addition, to the extent that this issue requires interpretation of Kansas' racial profiling statutes, this court reviews the issue de novo. See *State v. Hobbs*, 301 Kan. 203, 206, 340 P.3d 1179 (2015).

K.S.A. 2014 Supp. 22-4609 prohibits racial or other biased-based policing to justify a traffic stop, investigatory detention, search, or arrest. The statute provides:

"It is unlawful to use racial or other biased-based policing in:

"(a) Determining the existence of probable cause to take into custody or to arrest an individual;

"(b) constituting a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle; or

"(c) determining the existence of probable cause to conduct a search of an individual or a conveyance."

K.S.A. 2014 Supp. 22-4606(d) defines "racial or other biased-based policing" as

"the unreasonable use of race, ethnicity, national origin, gender or religion by a law enforcement officer in deciding to initiate an enforcement action. It is not racial or other biased-based policing when race, ethnicity, national origin, gender or religion is used in combination with other identifying factors as part of a specific individual description to initiate an enforcement action."

The State first claims that Gray failed to preserve this issue for appeal. This claim presents a close call. Gray's motion to suppress did not explicitly allege illegal racial policing as a ground for suppression. Under the circumstances, the State could not have been faulted for failing to present sufficient evidence to rebut the claim and prove that the stop was lawful. But at the conclusion of the hearing on the motion to suppress, Gray's counsel expressly argued that the stop violated the racial profiling prohibitions in K.S.A. 2014 Supp. 22-4606 and K.S.A. 2014 Supp. 22-4609. Based on the evidence that the State had presented, the district court addressed the argument and made specific findings overruling Gray's claim. Thus, we conclude that Gray properly preserved his claim for appeal.

*Remedy for violation of K.S.A. 2014 Supp. 22-4609*

Before we address whether K.S.A. 2014 Supp. 22-4609 was violated in this case, we will address the remedy available to a criminal defendant in the event of a violation of the statute. The State correctly points out that K.S.A. 2014 Supp. 22-4611 provides that a person who believes he or she was subjected to improper racial or other biased-based policing may file a complaint with the law enforcement agency. The statute further sets forth the procedure to review that complaint and ultimately states that upon disposition of the complaint, "the complainant shall have a civil cause of action in the district court" against the law enforcement officer, agency,

or both "and shall be entitled to recover damages if it is determined by the court that such officer or agency engaged in racial or other biased-based policing." K.S.A. 2014 Supp. 22-4611(c). The State argues that the civil remedy negates the need for application of a remedy in the criminal proceedings.

The State also argues that the Kansas statutes prohibiting racial or other biased-based policing do not provide for constitutional search and seizure protections subject to the exclusionary rule. "The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 640, 176 P.3d 938 (2008), *abrogated on other grounds Pianalto*, 301 Kan. at 1012-14. The rule serves to deter or prevent unconstitutional conduct by law enforcement officers by giving notice to the officers that any useful evidence they might obtain will be barred in a later criminal prosecution. See *State v. Turner*, 257 Kan. 19, 21, 891 P.2d 317 (1995). Although Gray possibly could have asserted a claim that the traffic stop violated his constitutional rights, he did not do so. Instead, Gray's claim focuses on the language of the Kansas statutes prohibiting racial or other biased-based policing. The State is correct that because Gray is not asserting a violation of his constitutional rights, the judicially created exclusionary rule does not provide a remedy for suppression of the evidence in his criminal case.

But in Kansas, the suppression of illegally seized evidence is governed by statute and Gray does not need to rely on the judicially created exclusionary rule that applies only to constitutional violations. The Kansas Code of Criminal Procedure provides that a defendant aggrieved by an *unlawful* search and seizure may move to suppress the evidence. K.S.A. 22-3216(1). As Gray notes, a traffic stop is a seizure. See *Pianalto*, 301 Kan. at 1011. Under K.S.A. 2014 Supp. 22-4609, it is *unlawful* to use racial policing in "(b) constituting a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle." Thus, if Huntley's actions violated K.S.A. 2014 Supp. 22-4609(b), as Gray argues, the plain language of K.S.A. 22-3216(1) authorizes Gray to seek sup-

pression of the evidence seized as a result of the unlawful stop. See *State v. Vrabel*, 301 Kan. 797, 810, 347 P.3d 201 (2015) (noting that the statutory right to suppress evidence is not restricted to defendants who are aggrieved by an unconstitutional search and seizure).

In sum, although the judicially created exclusionary rule does not provide a remedy for Gray in this instance, the plain language of K.S.A. 22-3216(1) authorizes Gray to seek suppression of the evidence obtained as a result of the claimed unlawful traffic stop. Moreover, the fact that K.S.A. 2014 Supp. 22-4611(c) provides a civil remedy for Gray for a violation of racial or other biased-based policing does not preclude Gray from pursuing his available remedy in the criminal proceedings.

## Was K.S.A. 2014 Supp. 22-4609 violated?

Gray contends that Huntley violated K.S.A. 2014 Supp. 22-4609, which prohibits the use of racial or other biased-based policing. Simply put, Gray claims that Huntley began following him and ultimately stopped his car, at least in part, because he is African-American. Gray further seeks the adoption by Kansas courts of a *Batson*-like procedure to be followed when racial policing claims are raised under the Kansas statutes. See *Batson v. Kentucky*, 476 U.S. 79. Gray advocates the following test: "Whenever an officer makes a pretextual stop of a member of a protected class, the burden should shift to the state to show some race-neutral justification, other than the basis for the pretextual stop itself, for investigating a particular person or vehicle."

The State responds that the adoption of a *Batson*-like procedure to resolve racial policing claims is unnecessary. The State points out that the district court heard the evidence and specifically found that Huntley did not stop Gray because of his race. The State argues that the district court's factual finding is supported by substantial competent evidence in the record.

At Gray's suppression hearing, Huntley testified that he began following Gray's car simply because it was there and because he knew from his experience that illegal drugs were often trafficked on I-135. Huntley explained that he realized the driver of the car

was male when they drove through a roundabout with street lighting. Gray's counsel asked, "Were you able to determine at that point in time that the driver was not only male, but African-American?" Huntley replied, "No." Later, Huntley confirmed that he only realized Gray's race at the gas station when he got out of the car. Still later, the following exchange occurred between Gray's counsel and Huntley:

"Q. When you saw there was a black male getting out of the car, did that change your level of suspicion?

"A. No, sir.

"Q. Didn't bother you at all this was now a black male as opposed to just a male?

"A. No, sir.

. . . .

"Q. . . . So, each time you learned something new about what the defendant did or what he looked like or where he was, your level of criminal suspicion increased; is that true?

"A. No, not what he looked like, just on his behaviors and his activities."

At the end of the hearing, in response to Gray's argument that the stop violated the Kansas statutes prohibiting racial or other biased-based policing, the district court stated:

"THE COURT: Okay. I didn't find anythere was nothing on the record that I heard that would lead me to believe that Mr. Gray was stopped because he was black. In fact, he had started to be followed because of some of these other factors before Deputy Huntley knew he was black because he didn't discover he was black until the convenience store or thereabouts or shortly thereafter. He did want to stop the car, no question about it. He wanted to stop the car because of other reasons . . . but they didn't have anything to do with Mr. Gray being black. At least, I heard nothing on the record to suggest to me that that's why.

. . . .

"I find Deputy Huntley to be credible. I don't find there's anything in the record Mr. Gray got stopped because he happened to be a black man."

We tend to agree with the State that the adoption of a *Batson*-like procedure to resolve racial policing claims is unnecessary. Under the Kansas Code of Criminal Procedure, the State bears the burden of proof for a suppression motion and the prosecution must provide evidence to the district court to prove the lawfulness of the search and seizure. K.S.A. 22-3216(2). Thus, when a defendant files a motion to suppress and claims that a Kansas law enforcement

officer unlawfully used racial or other biased-based policing, the burden is on the State to present evidence to the district court establishing that the officer's conduct was lawful and the statute was not violated.

The determination of whether Huntley violated K.S.A. 2014 Supp. 22-4609 depended almost exclusively on whether the district judge found credible Huntley's testimony that race was not a factor in his stopping Gray. In his brief, Gray warns that "[n]o officer is going to affirmatively admit that he or she made a pretextual stop based on race." That assertion may be true, but a district court is uniquely situated to evaluate the credibility and demeanor of witnesses testifying about their motivations to determine whether those motivations were improperly based on race. The district court is certainly not required to believe an officer's testimony that race was not a factor in a traffic stop if other evidence supports a conclusion that the officer's motivations were improperly based on race. Kansas judges make such witness credibility determinations at suppression hearings on a routine basis in courtrooms across the state.

We hold that in a hearing on a motion to suppress evidence, whether a law enforcement officer unlawfully used racial or other biased-based policing is a question of fact to be determined by the district court. As in any motion to suppress, the State bears the burden of proving the lawfulness of the search and seizure. K.S.A. 22-3216(2). On appeal, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *Pianalto*, 301 Kan. at 1012.

Huntley stopped Gray's car because he failed to signal a turn. "A traffic violation provides an objectively valid reason to effectuate a traffic stop, even if the stop is pretextual." *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006); see *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). Generally, an officer's subjective reason for the detention is not relevant when the traffic stop is based on reasonable suspicion that a crime has been committed. See *Whren*, 517 U.S. at 813; *State v. Thomp-*

*son,* 284 Kan. 763, 804-07, 166 P.3d 1015 (2007). But if the evidence establishes that an officer's pretextual stop is motivated by racial or other biased-based policing, then such conduct would run afoul of K.S.A. 2014 Supp. 22-4609. See also *Whren,* 517 U.S. at 813 ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race.") But that is not the case before this court.

Here, the district court found Huntley's testimony credible that he did not stop Gray because of his race. Without reweighing the evidence or assessing the credibility of the witnesses, we conclude that the district court's factual findings are supported by substantial competent evidence in the record. The State met its burden of establishing that the traffic stop was lawful and that K.S.A. 2014 Supp. 22-4609 was not violated. Thus, the district court did not err in denying Gray's motion to suppress.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTIONS OF FELONY INTERFERENCE WITH LAW ENFORCEMENT

Next, Gray claims there was insufficient evidence to support his convictions of felony interference with law enforcement because the State failed to prove that Huntley believed he was investigating a felony at the time Gray interfered with law enforcement. The State responds that it presented sufficient evidence to support the convictions.

"When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.] An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citation omitted.]" *State v. McClelland,* 301 Kan. 815, 820, 347 P.3d 211 (2015).

The State charged Gray with two counts of felony interference with law enforcement, one pursuant to K.S.A. 2013 Supp. 21-5904(a)(1)(B)—based upon Gray's giving a false name—and one pursuant to K.S.A. 2013 Supp. 21-5904(a)(3)—based upon Gray's attempt to run from officers. Interference with law enforcement in violation of K.S.A. 2013 Supp. 21-5904 was previously codified

at K.S.A. 21-3808. Under the prior statute, the crime was known as obstructing legal process or official duty.

Interference with law enforcement under K.S.A. 2013 Supp. 21-5904(a)(1)(B) was a "[c]lass A nonperson misdemeanor in the case of a misdemeanor" and a "severity level 9, nonperson felony in the case of a felony." K.S.A. 2013 Supp. 21-5904(b)(2). Similarly, interference with law enforcement under K.S.A. 2013 Supp. 21-5904(a)(3) was a "[s]everity level 9, nonperson felony in the case of a felony, or resulting from parole or any authorized disposition for a felony" and a "class A nonperson misdemeanor in the case of a misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case." K.S.A. 2013 Supp. 21-5904(b)(6).

More simply put, whether interference with law enforcement or obstructing legal process or official duty is a felony or misdemeanor depends on whether the officer is attempting to carry out an official duty related to a felony or a misdemeanor. See *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997) ("The touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists . . . ."); *State v. Lundquist*, 30 Kan. App. 2d 1148, 1154, 55 P.3d 928 (2002) ("[W]hat the officer believes at the time of pursuing a suspect determines if obstruction of official duty will be charged as a misdemeanor or felony."), *rev. denied* 275 Kan. 967 (2003). This case provides a good example of why this test is not always easy to apply.

Gray contends that the State failed to prove that Huntley believed he was investigating a felony at the time Gray interfered with law enforcement. The State responds that there was sufficient evidence because according to Huntley's police report, which was admitted into evidence at the bench trial on stipulated facts, he smelled marijuana and alcohol when he contacted Gray during the traffic stop. At that point, the State claims, the "investigation changed from a mere traffic stop to an investigation for possession of controlled substances and driving under the influence."

At the bench trial, the evidence before the district court was (1) Huntley's police report, (2) a KBI laboratory report, and (3) "[t]he evidence and exhibits presented at the suppression hearing," which consisted of testimony, Huntley's police report, and two maps on

which Gray and Huntley diagrammed the events of the night in question. As the State contends, Huntley's report stated that at the time Gray provided him with the false name, Huntley "could smell a moderate odor of marijuana emitting from inside the vehicle" and "detected a slight odor of an alcoholic beverage emitting from inside the vehicle" as well.

However, there is no evidence to support the State's assertion that the slight and moderate odors of alcohol and drugs led Huntley to believe he was investigating potential felony crimes. At the suppression hearing, Huntley did not testify as to any event that occurred after the traffic stop, so there is no testimony as to his beliefs about crimes being committed once he made the stop, which he explicitly testified was based solely on Gray's failure to signal a turn. Similarly, although Huntley's report indicated that he believed the driver was giving him a false name and therefore, "there was something serious the driver was hiding," the report does not identify any felony Huntley suspected Gray might have committed. Of course, Huntley had a hunch all along that Gray might be engaged in drug trafficking, but this hunch was not sufficient to justify the traffic stop.

Whether interference with law enforcement is a felony or misdemeanor depends on whether the officer was investigating a felony or misdemeanor offense at the time of the interference. See *Hudson*, 261 Kan. at 538-39. Here, there is no evidence that Huntley was investigating a felony. Had Huntley expressly testified that he was investigating a felony when he smelled the odor of marijuana and an alcoholic beverage emitting from inside the vehicle, such testimony would have supported Gray's conviction of felony interference with law enforcement. However, Huntley never provided such testimony.

In its brief, the State claims two unpublished opinions are instructive. In both cases, however, this court affirmed convictions of felony obstruction of official duty where the officer in question was investigating a crime that could have been charged as either a felony or misdemeanor based on criminal history. See *State v. Porter*, No. 85,223, slip op. at 9-10 (Kan. App.) (unpublished opinion) (investigating a theft), *rev. denied* 272 Kan. 1422 (2001); *State v.*

*Lowe*, No. 78,631, slip op. at 2-3 (Kan. App. 1998) (unpublished opinion) (investigating driving under the influence), *rev. denied* 266 Kan. 1113 (1999). *Porter* and *Lowe* are distinguishable. Had Huntley been investigating a theft or a DUI that could be charged as either a felony or misdemeanor based on criminal history, such evidence would have supported a conviction of felony interference with law enforcement. However, Huntley was not investigating a theft or a DUI.

In summary, the State failed to provide evidence that Huntley was investigating a felony at the time Gray interfered by giving a false name and trying to run away. Huntley explicitly testified that the traffic stop was based solely on Gray's failure to signal a turn, which is not a felony. Although Huntley testified that he smelled the odor of marijuana and an alcoholic beverage emitting from inside the vehicle, he never stated that this evidence raised the level of the traffic stop to a felony investigation. Even when the evidence is considered in a light most favorable to the State, we conclude that the State failed to provide sufficient evidence for a rational factfinder to have found Gray guilty beyond a reasonable doubt of two counts of felony interference with law enforcement. However, the evidence was sufficient to support Gray's convictions of two counts of misdemeanor interference with law enforcement. Thus, we reverse Gray's convictions of two counts of felony interference with law enforcement and remand with directions for the district court to resentence Gray for the misdemeanor convictions.

## JURISDICTION TO IMPOSE FELONY SENTENCE FOR POSSESSION OF MARIJUANA

Finally, Gray claims the district court lacked jurisdiction to impose a felony sentence for possession of marijuana because the State did not charge him with felony possession of marijuana. Specifically, Gray argues that the State's failure to allege in the complaint that he previously had been convicted of possession of marijuana deprived the district court of jurisdiction to sentence him for the crime of felony possession of marijuana because the felony classification was based on his prior conviction. The State argues

that the district court had jurisdiction to convict Gray of and sentence him for felony possession of marijuana based upon a prior conviction.

Gray does not suggest a standard of review for this issue. Perhaps this failure is because, as the State points out, Gray failed to raise the issue in the district court and raises it now for the first time on appeal. Nevertheless, because Gray alleges a jurisdictional defect, we will address the issue. See *State v. Williams*, 299 Kan. 509, 532, 324 P.3d 1078 (2014) (subject matter jurisdiction can be raised at any time). Furthermore, whether a complaint or information is sufficient to confer subject matter jurisdiction is a question of law subject to an unlimited standard of review. *State v. Gonzales*, 289 Kan. 351, Syl. ¶ 7, 212 P.3d 215 (2009).

Gray does not contend that he did not have a prior conviction for possession of marijuana; he argues instead that the State's failure to charge felony possession left the district court without jurisdiction to impose a felony sentence. The record belies this contention. In Count 2 of the complaint, the State charged Gray with "feloniously and intentionally" possessing marijuana "[i]n violation of K.S.A. 2011 Supp. 21-5706(b)(3), Unlawful Possession of a Controlled Substance, *a drug severity 5 felony*." (Emphasis added.) Possession of marijuana is a class A nonperson misdemeanor, except that it is a drug severity level 5 felony if the defendant has a prior conviction of possession of marijuana, as Gray did here. See K.S.A. 2014 Supp. 21-5706(c)(2). Contrary to Gray's argument, the State clearly charged him with a felony.

This court previously has rejected an argument similar to the one Gray is making here. In *Thompson v. State*, 32 Kan. App. 2d 1259, 1268, 96 P.3d 1115 (2004), *rev. denied* 278 Kan. 852 (2005), the defendant argued that the State's failure to allege his prior convictions in the complaint prevented those convictions from being used to elevate his possession of methamphetamine charge from a severity level 4 to a severity level 1 offense. The defendant in *Thompson* was charged and sentenced under the previous codification of the statute under which Gray was charged and sentenced. See K.S.A. 65-4160; K.S.A. 2014 Supp. 21-5706.

As this court noted in *Thompson*, our Supreme Court has recognized the "distinction between prior convictions that were an element of the offense and prior convictions that were used to establish the class of felony or the penalty to be imposed in a case." 32 Kan. App. 2d at 1268; see *State v. Masterson*, 261 Kan. 158, 162, 929 P.2d 127 (1996); *State v. Loudermilk*, 221 Kan. 157, 159, 557 P.2d 1229 (1976). The *Thompson* court further noted that prior convictions under a self-contained habitual criminal statute "do not constitute elements of the charged offense and 'are pertinent only to the sentence which shall be rendered in the event of a conviction.' [Citation omitted.]" 32 Kan. App. 2d at 1268. The *Thompson* court concluded that although the State must set forth the severity level of the offense when charging a crime under a habitual criminal statute, it need not allege the prior convictions. 32 Kan. App. 2d at 1269.

Here, the State clearly charged Gray with possession of marijuana, a severity level 5 felony—that severity level requires a prior conviction. See K.S.A. 2014 Supp. 21-5706(c)(2). The complaint provided Gray with proper notice of the severity level of the felony charge, and the district court had jurisdiction to impose a felony sentence for Gray's conviction of possession of marijuana.

Affirmed in part, reversed in part, and remanded with directions.