IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,035

STATE OF KANSAS,
*Appellee*,

v.

MARCUS GRAY,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 22-3216(1), which permits a defendant aggrieved by an unlawful search and seizure to move to suppress evidence, provides a suppression remedy for a violation of Kansas' biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 *et seq.*

2.

A district judge considering a motion to suppress based on an alleged violation of Kansas' biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 *et seq.*, must examine more than a law enforcement officer's ultimate justification for a traffic stop—i.e., more than whether the officer observed a traffic offense. The judge must consider whether the officer unreasonably used race, ethnicity, national origin, gender, or religion in deciding to initiate the enforcement action.

3.

K.S.A. 22-3216(2) requires a motion to suppress to be in writing and to state facts showing that a search and seizure were unlawful. Thus, a defendant asserting biased-based policing in violation of K.S.A. 2014 Supp. 22-4606(d) and 22-4609 must state that

1

the defendant's race, ethnicity, national origin, gender, or religion was unreasonably used by a law enforcement officer in deciding to initiate a traffic stop.

4.

Under K.S.A. 22-3216(2), once a defendant has filed a motion to suppress stating the basis for the claim that a search and seizure were unlawful, the State has the burden of proving that the search and seizure were lawful. To meet this burden when a defendant has alleged a violation of K.S.A. 2014 Supp. 22-4606(d) and 22-4609, the State must establish that neither race, ethnicity, national origin, gender, nor religion were unreasonably used by a law enforcement officer in deciding to initiate an enforcement action.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 1085, 360 P.3d 472 (2015). Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed October 27, 2017. Judgment of the Court of Appeals affirming in part and reversing in part the district court is reversed on the issues subject to our review. Judgment of the district court is reversed on the issues subject to our review, and the case is remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jason R. Lane*, chief deputy county attorney, argued the cause, and *David E. Yoder*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: K.S.A. 2014 Supp. 22-4609 provides in part: "It is unlawful to use racial or other biased-based policing in: . . . (b) constituting a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle." Marcus Gray alleged a law

enforcement officer violated this statute in stopping him for a traffic infraction. Gray unsuccessfully urged the district court to conclude this violation required suppression of any evidence obtained during the traffic stop under K.S.A. 22-3216(1). That statute allows "a defendant aggrieved by an unlawful search and seizure [to] move for the return of property and to suppress as evidence anything so obtained."

We have not had occasion to consider the biased-based policing statute and the suppression statute together. In *State v. Gray*, 51 Kan. App. 2d 1085, 360 P.3d 472 (2015), a panel of the Kansas Court of Appeals agreed with Gray's legal theory that these two statutes provide a suppression remedy for unlawful biased-based policing. Yet the panel affirmed the denial of Gray's motion to suppress because substantial competent evidence supported the district judge's determination that Gray was not actually stopped because of his race. 51 Kan. App. 2d at 1092-97. Gray petitioned this court for review of the panel's decision.

We first determine that the Court of Appeals and district court correctly concluded that Kansas law provides a suppression remedy for a violation of the biased-based policing provisions in K.S.A. 2014 Supp. 22-4609. We then consider and set forth the test for determining whether a biased-based policing violation occurred. Here, we cannot be confident the district judge examined any unreasonable "use" of race in the traffic stop, which is the conduct prohibited by K.S.A. 2014 Supp. 22-4609, as opposed to examining whether Gray's race was the ultimate "cause" of the traffic stop. Accordingly, we reverse the Court of Appeals and district court decisions in this case, vacate Gray's convictions, and remand to the district court for further action in accordance with this decision. Our decision on this point means Gray's other preserved issue is moot, and we do not reach it.

3

This appeal focuses on Gray's motion to suppress and the evidence presented at the hearing on that motion.

The State called Deputy Brandon Huntley of the Harvey County Sheriff's Office, who had arrested Gray. The deputy saw a Ford Focus driving north on Interstate 135 (I-135) between Wichita and Newton at approximately 2 a.m. on November 10, 2013. The deputy decided to follow the car; he explained he initially had no reason for doing so other than the fact the car was there. He ran a check on the license plate and learned it was registered to a woman in Salina. The deputy explained that he continued to follow the car because, through his "extensive experience with drug interdiction, specifically on I-135, [he had] often found . . . narcotics or illegal narcotics trafficking from Sedgwick County or the City of Wichita to Saline County or the City of Salina." On cross-examination, he affirmed he did not automatically assume every car traveling north through Harvey County with a Saline County tag was involved in drug activity. In this case he was suspicious, however, noting that the car's travel circumstances were among the "many indicators." The deputy acknowledged the driver did not speed, change speed, or take evasive action when the driver might have observed the patrol car.

At Newton, the Ford Focus exited I-135, and the deputy followed. As the Ford Focus drove through a roundabout with street lighting, the deputy could see that the driver, later identified as Gray, was male. The deputy testified he had "often found in [his] experience in drug interdiction" that male drivers of vehicles registered to women "are involved in illegal activity or criminal activity because they don't want to be attached or their name to be attached to anything." The deputy became more suspicious when Gray drove to a gas station, where he pulled up to the pumps on what the deputy incorrectly believed to be the side of the car without the gas cap. Gray exited the car and

4

went inside without pumping gas. The deputy testified that it was at this point he first observed that Gray was African-American. When Gray walked back to his car, he looked around 360 degrees, got into the Ford Focus, and stayed there for a minute before driving away.

The deputy followed the car. During his testimony, he admitted he was looking for a traffic infraction to pull the car over and, although the driver made several turns without incident, at a final turn the deputy observed a failure to signal. The deputy activated his sirens and stopped the car. During Gray's testimony, he insisted he had turned on his turn signal. On further questioning, however, Gray admitted that on the last turn he did so only after he reached the intersection; he did not signal during the last 100 feet before the turn.

Gray testified that after he was pulled over he told the deputy he believed he had been a victim of racial profiling. According to Gray, the deputy said, "I'm just doing my job." Gray initially gave the deputy false information about his identity and later attempted to run away. The deputy and a Newton police officer, who had responded as backup, apprehended Gray and placed him under arrest. The deputy then learned Gray's identity and determined he had outstanding out-of-state warrants and a suspended driver's license. The police officer transported Gray to the Harvey County Detention Center and found marijuana and cocaine on Gray.

After Gray was charged, he filed the motion to suppress that is the subject of this appeal. In the written motion, he generally argued he had been subject to an "illegal traffic stop and detention." The written motion did not assert the issue now before us— i.e., whether the seizure of Gray was unlawful because it was based on racial or other biased-based policing. Nor did it cite to the biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 and 22-4609.

5

The district judge, after hearing the deputy's and Gray's testimony, denied Gray's motion to suppress. The district judge initially stated "the only issue is whether or not there's a traffic infraction" because Kansas courts had sanctioned pretextual stops as long as the driver had committed a traffic infraction. The judge noted that the deputy testified there was no turn signal at all—a fact Gray disputed, although his own testimony established he at least did not signal *before* the turn, as the law required. See K.S.A. 8-1548 (requiring a signal 100 feet before a turn). The district judge ultimately found the deputy's testimony was credible as to whether Gray used his turn signal. As for the rest of the testimony regarding the deputy's suspicions, the judge stated it simply did not matter—so long as the deputy observed Gray committing a traffic infraction, the deputy's pretext for the stop was irrelevant.

Gray then indicated he wished to preserve an additional argument for appeal, and he asked the judge to consider whether there was "any racial profiling involved in the stop." He referenced K.S.A. 2014 Supp. 22-4606, K.S.A. 22-4607, and K.S.A. 2014 Supp. 22-4609, through which the Kansas Legislature had, in his opinion, "changed the law on pretextual stops if there's a racial profiling involved." Gray argued that if racial profiling was involved, the pretext was invalidated. The district judge then found "there was nothing on the record that [he] heard that would lead [him] to believe that Mr. Gray was stopped because he was black." The district judge ultimately denied Gray's motion to suppress.

Gray's case proceeded to a bench trial, where the parties stipulated to the admission of the evidence and exhibits presented at the suppression hearing, the deputy's police report, and the Kansas Bureau of Investigation's laboratory report. Because our decision focuses on the suppression issues, we will not recount the full evidentiary record. In short, the district judge convicted Gray of possession of cocaine, felony

6

possession of marijuana, two counts of obstruction or interference with a law enforcement officer, driving with a suspended license, and a turn signal violation. The district judge sentenced Gray to a controlling sentence of 26 months' imprisonment.

Gray appealed and raised three issues before the Court of Appeals: (1) whether the district judge erred in denying Gray's motion to suppress; (2) whether there was sufficient evidence supporting Gray's convictions for felony interference with a law enforcement officer; and (3) whether the district judge had jurisdiction to convict Gray of felony possession of marijuana. The Court of Appeals ruled in Gray's favor on Issue 2— the sufficiency of the evidence challenge—and "reverse[d] Gray's convictions of two counts of felony interference with law enforcement and remand[ed] with directions for the district court to resentence Gray for the misdemeanor [interference with law enforcement] convictions." *Gray*, 51 Kan. App. 2d at 1100. Neither Gray nor the State has sought further review of this ruling, and so we do not consider it. See Supreme Court Rule 8.03(a)(4) (2017 Kan. Ct. R. 53) (Kansas Supreme Court "will not consider issues not presented or fairly included in the petition" for review of Court of Appeals decision). However, the Court of Appeals ruled against Gray on his other two arguments, and we granted Gray's petition for review on these two issues (Issues 1 and 3 in the Court of Appeals decision). The State did not file a cross-petition seeking review of any rulings. We have jurisdiction pursuant to K.S.A. 20-3018(b).

ANALYSIS

1. *We cannot determine whether the district court applied the correct test to Gray's argument that a statutory violation created a possible suppression remedy.*

Before reaching the substance of Gray's argument, we pause to clear a few preliminary matters out of the path. Before the Court of Appeals, the State argued Gray failed to preserve his biased-based policing argument for appeal because he did not

7

mention it or cite the relevant statutes in his written motion to suppress. The Court of Appeals rejected this argument, concluding Gray sufficiently preserved his statutory suppression argument by raising the issue at the hearing on the motion, and it also noted the district judge was able to address Gray's argument and make specific findings. *Gray*, 51 Kan. App. 2d at 1091-92.

Although the State has again raised its preservation argument before us at oral argument, we note that the State did not cross-petition for review. This failure means the Court of Appeals' preservation conclusion is not properly before us, and we will not consider it. See Supreme Court Rule 8.03(h)(1) (2017 Kan. S. Ct. R. 56) ("[I]ssues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals."); *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016) ("Because the State did not cross-petition to challenge the Court of Appeals' preservation ruling in favor of [the defendant], we will not consider whether the panel erred on this point.").

Another preliminary consideration: This appeal differs from typical suppression issues based on alleged violations of the Fourth Amendment to the United States Constitution. Gray does not make a constitutional argument nor does he seek suppression under the court-imposed exclusionary rule designed to protect Fourth Amendment rights. See *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (extending the constitutional federal exclusionary rule to the states via the Fourteenth Amendment); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 640, 176 P.3d 938 (2008) (discussing history and purposes of judicially imposed exclusionary rule), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 1011-13, 350 P.3d 1048 (2015).

This understanding impacts our analysis in two respects. First and most obviously, we do not decide any constitutional issues here. See *Whren v. United States*, 517 U.S.

806, 810, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (holding [1] a traffic-violation arrest does not violate the Fourth Amendment to the United States Constitution simply because "it was 'a mere pretext for a narcotics search'" and [2] "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment"); see also Holland, *Racial Profiling and a Punitive Exclusionary Rule*, 20 Temple Political & Civil Rights L. Rev. 29 (2010) (gathering and discussing post-*Whren* cases brought under the Equal Protection Clause of the Fourteenth Amendment). Second, limiting our consideration to statutory, rather than constitutional, provisions means our analysis diverges from that used in a typical case involving appellate review of a motion to suppress.

While we will discuss some of these differences later on in our decision, we note here the impact on our standard of review: The circumstances of this case require us to step back from the traditional vantage point from which we review a district judge's ruling on a motion to suppress. See *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998) (appellate courts "review the factual underpinnings of the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard"). This deviation occurs because Gray presents arguments of first impression regarding the test to be applied under Kansas' biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 *et seq*., and the availability of suppression as a remedy under K.S.A. 22-3216(1). We must interpret these statutes to determine their applicability and the tests to be applied by a district judge confronting a motion brought under those statutes. We must then determine if the district judge in this case applied that test. Only if the judge applied the correct legal test would we turn to the factual issues and determine if substantial competent evidence supported the judge's findings and if the judge reached the correct legal conclusion.

9

We exercise unlimited review over issues of statutory interpretation. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012). Legislative intent governs that review, and "[r]eliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" *State v. Spencer Gifts,* 304 Kan. 755, 761, 374 P.3d 680 (2016) (quoting *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 [2015]). Therefore, we read the statutory language as it appears, without adding or deleting words, and only "[i]f the language is less than clear or is ambiguous, [do] we move to statutory construction." *Ambrosier v. Brownback*, 304 Kan. 907, 911, 375 P.3d 1007 (2016). If a statute is not ambiguous, we do not examine "legislative history, background considerations that speak to legislative purpose, or canons of statutory construction." *In re Marriage of Brown*, 295 Kan. at 969.

### 1.1.  *Remedy for violation of K.S.A. 2014 Supp. 22-4606(d) and 22-4609*

We, as did the Court of Appeals, begin our analysis with the question of whether a statutory suppression remedy under K.S.A. 22-3216(1) is even theoretically available to Gray.

K.S.A. 22-3216(1), as we previously noted, permits "a defendant aggrieved by an *unlawful* search and seizure [to] move for the return of property and to suppress as evidence anything so obtained." (Emphasis added.) This wording underscores the significance of Gray's reliance on a statutory basis for his motion to suppress, as compared to the more historically common motion based on a constitutional violation: "Pointedly, the statutory right to suppress evidence is not restricted to those defendants who were aggrieved by an *unconstitutional* search and seizure. Instead, the statute applies to an *unlawful* search and seizure," and "the word 'unlawful' is often used in the context of a violation of state law." *State v. Vrabel*, 301 Kan. 797, 810, 347 P.3d 201 (2015).

10

K.S.A. 2014 Supp. 22-4609, begins by stating: "It is *unlawful* to use racial or other biased-based policing." (Emphasis added.) Given this wording, the Court of Appeals concluded "the plain language of K.S.A. 22-3216(1) authorizes Gray to seek suppression of the evidence seized as a result of the unlawful stop" if the deputy's actions violated K.S.A. 2014 Supp. 22-4609(b). 51 Kan. App. 2d at 1093-94. We agree. The plain language of the Kansas suppression statute and the biased-based policing statutes lead to this result.

Our sparse caselaw on this subject accords with our plain language determination. The one case that appears to have applied K.S.A. 22-3216 outside a Fourth Amendment context is *State v. Sodders*, 255 Kan. 79, 872 P.2d 736 (1994). We say "appears to have" because the *Sodders* court, which considered the legality of a search conducted by officers outside their territorial city limits, affirmed a district court decision to suppress evidence but did not cite K.S.A. 22-3216. Nevertheless, in our subsequent decision in *Vrabel*, we interpreted *Sodders* as inferentially applying the statute, noting that the *Sodders* court "affirmed the suppression of evidence based upon a [statutory] violation, without finding a concurrent federal constitutional infringement." *Vrabel*, 301 Kan. at 809.

*Vrabel*, like *Sodders*, involved a motion to suppress where a defendant challenged evidence of a controlled drug buy that was set up by law enforcement officers outside their city boundaries—and arguably outside their statutorily limited jurisdiction. This court agreed with the district court that the law enforcement officers acted in violation of the police jurisdiction statute, but we were less sure about the district court's decision to therefore suppress the evidence. *Vrabel*, 301 Kan. at 808-09.

We ultimately ruled that *Vrabel* was not a search and seizure case at all, and thus there was no statutory suppression remedy to consider. *Vrabel*, 301 Kan. at 810; see

11

K.S.A. 22-3216(1) ("a defendant aggrieved by an *unlawful search and seizure* may move for the return of property and to suppress as evidence anything so obtained" [emphasis added]). But we nonetheless considered an amicus curiae plea to "exercise our inherent supervisory authority to suppress evidence obtained in violation of state law," even in the absence of a constitutional or statutory remedy, and we deliberated over Hawaii's approach in *State v. Pattioay*, 78 Hawaii 455, 896 P.2d 911 (1995). *Vrabel*, 301 Kan. at 812.

We found Hawaii's "rationale of maintaining the integrity of the judicial process by refusing to justify and condone tainted evidence . . . mildly seductive." *Vrabel*, 301 Kan. at 812. But the police jurisdiction statute involved in *Vrabel* "was put in place to protect the local autonomy of neighboring cities and counties, rather than to create an individual right" for a suspect to only be caught by a local law enforcement officer. 301 Kan. at 813. "Consequently, the suppression of any evidence obtained during a city officer's unauthorized exercise of police power outside the officer's employing city— other than a search or seizure—will generally not be required." 301 Kan. at 813-14.

The reasons for our reservations in *Vrabel* do not apply in this case. Here, we clearly have a seizure followed by a search. See *Whren*, 517 U.S. at 809-10 ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]. . . . An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."); *DeMarco*, 263 Kan. at 733 ("A routine traffic stop is a seizure under the Fourth Amendment.").

Consequently, K.S.A. 22-3216 applies, and we need not consider suppression based on the exercise of our inherent powers. See *Vrabel*, 301 Kan. at 812-14. Nor do we

12

need to discuss the various decisions determining whether suppression serves as an appropriate remedy for selective enforcement of statutes and ordinances under the Equal Protection Clause Fourteenth Amendment claim. See Holland, 20 Temp. Pol. & Civ. Rts. L. Rev. 29.

In summary, the Kansas Legislature has tied the suppression remedy to one consideration and one consideration alone:  Was there "an *unlawful s*earch and seizure?" (Emphasis added.) K.S.A. 22-3216(1). If so, suppression is an appropriate remedy. Circling back to the plain language of K.S.A. 2014 Supp. 22-4609 that "[i]t is unlawful to use racial or other biased-based policing," we hold that K.S.A. 22-3216 provides a remedy for a violation of Kansas' biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 *et seq.*

### 1.2.   *Violation of K.S.A. 2014 Supp. 22-4606(d) and 22-4609*

Although we hold Gray could *pursue* a suppression remedy for a statutory violation, that is quite different from an inquiry into whether he should have received such a remedy in this case—and what framework the district judge should have used in evaluating Gray's claim.

Those inquiries begin with K.S.A. 2014 Supp. 22-4609, which provides:

"It is unlawful to use racial or other biased-based policing in:

"(a)  Determining the existence of probable cause to take into custody or to arrest an individual;
"(b)  constituting a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle; or

"(c) determining the existence of probable cause to conduct a search of an individual or a conveyance."

Considering this language alone, a court could arguably conclude that so long as an officer observed someone committing a traffic or other offense, then a stop was legal. See *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006) (For Fourth Amendment purposes "[a] traffic violation provides an objectively valid reason to effectuate a traffic stop, even if the stop is pretextual."); see also *Whren*, 517 U.S. at 814, 819 ("[W]*hatever* the subjective intent" of officers they "had probable cause to believe that petitioners had violated the traffic code," which "rendered the stop reasonable under the Fourth Amendment, [and] the evidence thereby discovered admissible."). In other words, a stop would be lawful if an officer stopped a vehicle because of the traffic violation, not because of the driver's race, ethnicity, national origin, gender, or religion.

At least facially, that is what the district court and Court of Appeals concluded. The district judge found "there was nothing on the record that [he] heard that would lead [him] to believe that Mr. Gray was stopped because he was black." Likewise, the Court of Appeals concluded this finding demonstrated the district judge found Deputy "Huntley's testimony credible that he did not stop Gray because of his race." 51 Kan. App. 2d at 1097.

We see no reason to doubt this credibility determination that the deputy did not stop Gray "because of his race." But Kansas' biased-based policing statutes require a different inquiry.

K.S.A. 2014 Supp. 22-4609 states: "It is unlawful to use racial or other biased-based policing," and K.S.A. 2014 Supp. 22-4606(d) defines the operative phrase as follows: "'Racial or other biased-based policing' means the unreasonable use of race,

14

ethnicity, national origin, gender or religion by a law enforcement officer in deciding to initiate an enforcement action." K.S.A. 2014 Supp. 22-4606(d) also provides that "[i]t is not racial or other biased-based policing when race . . . is used in combination with other identifying factors as part of a specific individual description to initiate an enforcement action."

We read K.S.A. 2014 Supp. 22-4609 and 22-4606(d) together to provide the test a district court should use when considering a motion to suppress based on an alleged violation of Kansas' biased-based policing statutes:  The district judge must examine more than the ultimate justification of a traffic stop and must consider whether an officer "unreasonably use[d]" race or another characteristic listed in K.S.A. 2014 Supp. 22-4606(d) in deciding to initiate the enforcement action of a traffic stop.

Here, the Court of Appeals recognized the impact of K.S.A. 2014 Supp. 22-4606(d) and stated that a pretextual stop could run "afoul" of K.S.A. 2014 Supp. 22-4609 if race motivated the stop. *Gray*, 51 Kan. App. 2d at 1097. In concluding that the stop in this case did not run afoul of the statute, the Court of Appeals noted that the deputy testified to other reasons he wanted to stop the car. Although the Court of Appeals did not the list the various reasons it had set out in the facts, in our review of the record we found mention in the deputy's testimony of the following potential reasons:  The car was being driven on I-135 between Wichita and Salina at approximately 2 a.m.; the car was registered to a woman but driven by a man; the driver pulled up to the gas station pumps on what the deputy incorrectly believed to be the side without the gas cap; the driver did not pump any gas and yet did not park in the completely open parking lot next to the convenience store; when the driver left the gas station he looked around 360 degrees, got into the car, and stayed there for a minute before driving away; and the driver did not appropriately signal his final turn. The Court of Appeals also noted that the deputy testified he did not realize Gray's race until Gray stepped out of his car at the gas

15

station and that his decisionmaking did not depend on "what [Gray] looked like, just on his behaviors and his activities."

This evidence, the Court of Appeals concluded, provided substantial competent evidence to support the district judge's findings that Gray was not stopped because of his race. *Gray*, 51 Kan. App. 2d at 1094-97. The Court of Appeals ultimately accepted the district court's conclusion and affirmed that race did not "cause" the stop.

Nevertheless, these conclusions about the *cause* of the stop are simply not nuanced enough to encompass whether race was *used* by the deputy in his decisionmaking process. Race may not have caused the traffic stop—i.e., it may not have produced the result. See Black's Law Dictionary 265 (10th ed. 2014) (defining "cause"). In fact, the stop may have occurred even if Gray's race had not been identifiable. See Black's Law Dictionary 265 (defining "actual cause" as "but-for cause," meaning "[t]he cause without which the event could not have occurred"). But race still may have been employed, or *used*, as a factor in the deputy's decision, and race may have given weight to those but-for reasons the deputy identified as the *causes* for his decision to initiate the traffic stop.

Granted, the district judge did find that the deputy "wanted to stop the car because of other reasons . . . but they didn't have anything to do with Mr. Gray being black." But this statement was bookended by the judge's findings that nothing "would lead me to believe that Mr. Gray was stopped because he was black" and "I don't find there's anything in the record Mr. Gray got stopped because he happened to be a black man." In this context, we cannot be confident the district judge applied the correct test and evaluated whether the deputy unreasonably used race in deciding to initiate the traffic stop.

16

We recognize that the bias-based policing issue flew at the district judge with no warning and with no appellate caselaw to guide his decisionmaking. And we typically shy away from requiring the use of "magic words" in our review of district court findings. Nevertheless, we cannot ignore that the district judge—or at least the words he used—focused on causation, which can be subtly—but in this context, significantly—different from use. We simply do not have conclusions from the district court about whether race was used in the deputy's decision, or whether such use, if it occurred, was unreasonable.

Gray further faults the district judge for relying too heavily on the deputy's statement that his suspicion did not increase when he realized Gray was African-American. He argues that "if [it] is sufficient to simply testify that race did not factor into a decision, the statute prohibiting racial profiling is left impotent." He suggests we must "give some teeth to the Kansas statutory prohibition on racial profiling."

To do so, Gray proposes a burden-shifting test similar to that employed in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), when a party preemptively strikes a potential juror because of his or her race or another protected characteristic. Specifically, Gray offers this procedure: "Whenever an officer makes a pretextual stop of a member of a protected class, the burden should shift to the state to show some race-neutral justification, other than the basis for the pretextual stop itself, for investigating a particular person or vehicle."

Some parallels exist between *Batson* and this case. Through the *Batson* procedure, the United States Supreme Court hoped to curb a process that "permits 'those to discriminate who are of a mind to discriminate.'" 476 U.S. at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S. Ct. 891, 97 L. Ed. 1244 [1953]). The legislative record surrounding the 2004 enactment of and the 2011 amendments to Kansas' biased-based policing statutes demonstrates a legislative attempt to prevent pretextual traffic stops

17

from being a process that permits bias to interfere with the fair and equal enforcement of laws–that is, similar enforcement regardless of the offender's race, ethnicity, national origin, gender, or religion. See, e.g., *Minutes, Hearing Before the Senate Federal and State Affairs Comm.*, 2005 Legislative Session (Feb. 3, 2005; Feb. 9, 2005; Feb. 22, 2005); *Conference Committee Report Brief, Senate Bill No. 77* (March 31, 2005); *2011 Summary of Legislation, Racial and Bias-Based Policing—SB 93*; *Minutes, Hearing Before the Senate Federal and State Affairs Comm.*, 2011 Legislative Session (Feb. 9, 2011; Feb. 10, 2011); *Minutes, Hearing before the House Judiciary Comm.*, 2011 Legislative Session (March 16, 2011); *Supplemental Note on Senate Bill No. 93, as amended by House Committee of the Whole*, 2011 Legislative Session.

Furthermore, both the practices discussed in *Batson* and the alleged conduct in this case create harm "extend[ing] beyond that inflicted on the defendant" that "touch the entire community," as they "undermine public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87, 96. Consequently, the goals of both processes are similar.

Nevertheless, Gray has failed to persuade us a unique process is necessary here, especially in light of the procedures put in place by K.S.A. 22-3216(2). Initially, the statute requires that "[t]he motion shall be in writing and state facts showing wherein the search and seizure were unlawful." Thus, similar to the first step of *Batson*, a defendant must state facts showing the procedure to be unlawful—i.e., facts showing: (1) The defendant is a member of a class listed in K.S.A. 2014 Supp. 22-4606(d) and (2) the reasons for arguing that race (or another listed characteristic) was unreasonably used in the decisionmaking process for initiating the stop. Cf. *Batson*, 476 U.S. at 96 ("[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show

18

that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. [Citation omitted.]").

After this first step in the motion to suppress process, the suppression statute provides that "the burden of proving that the search and seizure were lawful shall be on the prosecution." K.S.A. 22-3216(2); cf. *Batson*, 476 U.S. at 97 ("Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."). When a motion to suppress asserts a violation of K.S.A. 2014 Supp. 22-4606(d) and 22-4609, the State will have the burden to establish that neither race, ethnicity, national origin, gender, nor religion were unreasonably used by a law enforcement officer in deciding to initiate an enforcement action.

Gray asks us to go a step further and essentially end all pretextual traffic stops by requiring the officer to provide a basis for an articulable belief that the driver was committing a crime other than a traffic offense. The United States Supreme Court decided not to take a similar step in *Batson*, stating: "[W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." 476 U.S. at 97. Likewise, we stop short of requiring an officer to articulate grounds separate from a traffic offense as the "but-for" cause of the stop. The biased-based policing statutes do not require this result. Instead they prohibit the unreasonable use of race in deciding to initiate a pretextual enforcement action.

This means that ultimately, at least in many cases, the determination of whether an officer unreasonably used race will largely depend on credibility—a weighing-of-the-evidence process that is already quite familiar to district judges. As with any credibility assessment, a district judge must weigh surrounding facts and circumstances along with a

19

witness' statements. In a case like Gray's, where the defendant urges suppression based on an unlawful (but not unconstitutional) search or seizure, a district court cannot focus on whether a traffic violation caused or justified a pretextual stop. Instead, the district court must consider whether race, national origin, ethnicity, gender, or religion was unreasonably used in deciding to *initiate* the enforcement action. This means that a judge will consider any reasons proffered by the State as to why a particular traffic signal violation was enforced and determine whether those reasons credibly, fairly, and uniformly would result in decisions to initiate traffic stops regardless of a driver's race, ethnicity, national origin, gender, or religion.

We simply cannot determine from the record whether this is the assessment made by the district judge in this case. We, therefore, vacate Gray's convictions and remand Gray's case to the district court for another hearing on Gray's motion to suppress. We express no opinion as to the outcome of that hearing and only instruct that the district court should consider whether the State met its burden of "proving that the search and seizure were lawful," taking into account the language of K.S.A. 2014 Supp. 22-4606(d) and 22-4609.

2. *We do not reach the question of whether the district court had jurisdiction to convict Gray of felony possession of marijuana.*

Gray additionally argues the State failed to properly charge him with felony possession of marijuana because, while the charging document stated Gray possessed marijuana, it did not allege Gray had at least one prior conviction for possession of marijuana. He contends this oversight rendered the district court without jurisdiction to convict and sentence Gray for felony possession of marijuana, as at most the charging document only charged misdemeanor possession of marijuana.

20

Because we have vacated Gray's convictions we need not reach this issue. As guidance on remand, we note that since the Court of Appeals considered this issue, this court decided *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). As Gray's counsel conceded at oral argument, *Dunn* must frame any arguments made by the parties on remand and must guide the district court's decision.

The Court of Appeals decision on the issues before us is reversed. The district court's judgment on those issues is reversed and the case is remanded for further proceedings in accordance with this decision.